Lisa BUCCINO,
*Appellant,*

*v.*

CALIFORNIA CASUALTY INSURANCE
COMPANY,
a California corporation,
and California Casualty & Fire Insurance Company,
a California corporation,
*Respondents.*

(9606-04243; CA A98568)

978 P2d 441

Joe D. Bailey, Judge pro tempore.

David J. Sweeney argued the cause for appellant. On the briefs were Miles Sweeney, Douglas D. Morris and Brownstein, Rask, Arenz, Sweeney, Kerry & Grim, LLP.

G. Kenneth Shiroishi argued the cause for respondents. With him on the brief was Dunn, Carney, Allen, Higgins & Tongue.

Before Landau, Presiding Judge, and Wollheim and Brewer,* Judges.

BREWER, J.

---

* Brewer, J., *vice* Rossman, S. J.

## BREWER, J.

Plaintiff appeals from a judgment for defendants following entry of summary judgment for defendants on her claims for reformation of an insurance contract and for breach of that contract. Because defendants did not show that they complied with the statutory requirement that insurers offer uninsured/underinsured motorist (UM/UIM) coverage equal to bodily injury liability limits to the insured when issuing automobile insurance policies, we reverse and remand.

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and the moving party is otherwise entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 412-14, 939 P2d 608 (1997).

The material facts, viewed in the light most favorable to plaintiff, are as follows. Plaintiff was injured in a motor vehicle accident in 1991. Damages from her injuries exceeded the driver's available liability insurance limits. Plaintiff submitted a claim for UIM benefits to defendants, who insured her under her mother's policy. Defendants denied the claim. Plaintiff's mother, Nancy Buccino, originally purchased the policy in 1982, with bodily injury limits of $100,000 per person and $300,000 per occurrence. The original policy included UM/UIM coverage with limits of $25,000 per person and $50,000 per occurrence. Defendants, however, did not offer plaintiff's mother the option to increase the policy's UM/UIM coverage up to her bodily injury liability limits at that time. Nancy renewed her policy regularly. The UM/UIM limits rose in 1984 due to a change in defendants' underwriting policy. However, Nancy did not request that increase or any other increase in her UM/UIM coverage. Defendants allege that they sent Nancy written offers of UM/UIM coverage up to her liability limits in 1986, 1987, and 1989. Plaintiff disputes that allegation. After the 1991 accident and defendants' denial of UIM benefits, plaintiff filed this action. She asked the trial court to reform the policy to provide UM/UIM coverage up to the $100,000/$300,000 limits of bodily injury

coverage and to award damages for defendants' breach of the contract, as reformed. Defendants filed a motion for summary judgment, which was granted, and this appeal follows.

There is no evidence that defendants made any offer of UM/UIM coverage options at the time the policy was originally issued. Therefore, a legal question is dispositive on summary judgment. That question is whether ORS 743.789 (1981), *renumbered as* ORS 742.502 (1997), requires us to impose increased UM/UIM coverage to cover this accident because defendants did not offer such coverage at issuance, notwithstanding the fact that they allege[1] they sent information regarding such coverage to their insured at renewal.

This case presents an issue quite similar to that raised in *Savage v. Grange Mutual Ins. Co.*, 158 Or App 86, 970 P2d 695 (1999), in which we did impute such coverage. That case addressed whether the duty to offer increased UM/UIM coverage at issuance of an umbrella liability policy was abrogated by a later enacted statute exempting umbrella policies, where the policy was issued before, but the accident occurred after, enactment of the exemption. *Id.* at 88. We held that the duty to offer increased coverage must be imputed at issuance, and therefore the higher limits applied to the plaintiff's loss. *Id.* at 94-95. To reach that result, we construed ORS 742.502, which is the renumbered version of ORS 743.789 (1981), the statute at issue in this case. *Id.* at 89. The statute has been amended three times since 1982, but none of those amendments affects the present dispute.

ORS 743.789 (1981) provided, in part:

"(1) Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle shall provide uninsured motorist coverage therein or by indorsement thereon when such policy is either:

"(a) Issued for delivery in this state; or

---

[1] Plaintiff challenges the sufficiency of defendants' evidence that offers of increased UM/UIM coverage were sent to the insured at renewal. Given our disposition of this case, we do not reach this argument. The dispositive issue on appeal is whether or not the disputed making of such offers constitutes a genuine issue of *material* fact in the first place.

"(b)   Issued or delivered by an insurer doing business in this state with respect to any motor vehicle then principally used or principally garaged in this state.

"(2)   The insurer issuing such policy shall offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS chapter 486, up to the limits provided under the policy for motor vehicle bodily injury liability insurance. Offers of uninsured motorist coverage larger than the amounts required by ORS chapter 486 shall include underinsurance coverage * * *. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile insurance policies.

"(3)   Underinsurance coverage shall be subject to ORS 743.792."

In *Savage*, we held:

"[A]t the time defendant issued [the policy]: (1) defendant had a statutory duty to offer [UM/UIM] coverage up to [the policy's] liability limits; (2) defendant breached that duty; and (3) the remedy for that breach was to impute [UM/]UIM coverage up to the liability limits." 158 Or App at 90.

There is intuitive appeal in defendants' suggestion that their insured's repeated rejection of higher UM/UIM limits at renewal suggests that she would have rejected the same offer at issuance. We were not required to reach that causation argument in *Savage*. The insurer there described the imputation of coverage in a hypothetical case in which coverage was rejected after issuance as unfair but asserted that such a result would be compelled by the decision ultimately reached in *Savage*. *Id.* at 96-97. We concluded that, "Even if that scenario was correct—and we express no view as to whether it is—the result we reach is compelled by statute and precedent." *Id.* at 97. We now reach the question left undecided by *Savage*. In *Blizzard v. State Farm Automobile Ins. Co.*, 86 Or App 56, 61, 738 P2d 983, *rev den* 304 Or 149 (1987), we imputed UIM coverage as a result of the defendant insurer's breach of its statutory duty to offer additional coverage, irrespective of the absence of proof that the insured would have purchased the coverage had the offer been made. We relied on the reasoning applied in *Kuchenmeister v. Ill. Farmers Ins. Co.*, 310 NW2d 86, 88 (Minn 1981). There, the

Minnesota Supreme Court declined the insurer's request for a jury trial to determine whether such an offer would have been accepted because: (1) the determination would be too speculative; and (2) it would allow insurers to circumvent the statutory requirement of an offer at original issuance.

Even if there is less risk of speculation about the insured's inclination to purchase additional UM/UIM coverage at issuance in this case than in *Blizzard* and *Kuchenmeister*, the second factor justifying imputed coverage cited in *Kuchenmeister* remains compelling. In *Pierce v. Allstate Ins. Co.*, 316 Or 31, 35-36, 848 P2d 1197 (1993), also cited in *Savage*, the Oregon Supreme Court held that the statutory obligation to offer UIM coverage applied only at the original issuance of the policy and not to renewals.

Failure to comply with the legislative directive has uniformly resulted in the imputation of coverage in Oregon appellate decisions in which the issue has arisen to date. We reach the same result in this case. We will not ignore the mandate of statute and precedent by sanctioning a factual inquiry that might permit defendants to circumvent the obligation imposed upon them by the legislature. Defendants had a statutory duty to offer UM/UIM coverage *at issuance* up to their insured's bodily injury liability limits. It is uncontroverted that defendants did not offer such coverage as required. Defendants were not entitled to judgment as a matter of law. Summary judgment was therefore improper.

Reversed and remanded.